UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DELISHA D.,[1]

                            Plaintiff,                    DECISION AND ORDER

-vs-

                                         1:20-CV-0779 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Jan. 22, 2021, ECF No. 11; Def.'s Mot., Mar. 29, 2021, ECF No. 13. Plaintiff maintains that remand to the Commissioner is warranted because the Administrative Law Judge ("ALJ") deciding her case failed to reconcile the conflict between the opinion of her treating physician, the opinion of another medical source in the record, and the ALJ's RFC determination. Pl. Mem. of Law, Jan. 22, 2021, ECF No. 11-1. The Commissioner disputes Plaintiff's contentions. Def. Mem. of Law, Mar. 29, 2021, ECF No. 13-1.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[ECF No. 11] is denied, the Commissioner's motion [ECF No. 13] is granted, and the Clerk of Court is respectfully directed to close this case.

LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citing Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. Poupore v. Asture, 566 F.3d 303, 306 (2d Cir. 2009).

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff protectively filed her DIB and SSI applications in August 2016, alleging a disability onset date of June 1, 2015. Transcript ("Tr."), 185–215, Nov. 20, 2020, ECF No. 8. In her applications, Plaintiff alleged that her ability to work was limited by degenerative disc disease, lower back pain, and left leg numbness. Tr. 233. On November 14, 2016, the Commissioner determined that Plaintiff's condition was not severe enough to keep her from working, and therefore found that she was not disabled and did not qualify for either DIB or SSI benefits. Tr. 109–13. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 125.

Plaintiff's request was approved, and the hearing was held in Buffalo, New York on December 26, 2018. Tr. 33. Plaintiff appeared with counsel, and an impartial vocational expert ("VE") joined the hearing by phone. Tr. 33, 36. With respect to her education and work history, Plaintiff testified that she dropped out of school in ninth grade but had training as a Personal Care Aide (PCA), and that she worked several temporary jobs through staffing agencies, including as a machine packager in a chocolate factory and a customer service representative for a bank. Tr. 42–47. Plaintiff also testified that she had worked at Domino's and McDonald's, and that her most recent job was as a PCA. Tr. 47–49.

With respect to her activities of daily living, Plaintiff testified that she lives alone with her young daughter, and spends her time caring for her daughter: feeding her,

clothing her, getting her back and forth to the bus stop for school, baking with her, and taking her to the park and – when she can afford it – to Chuck-E-Cheese or the movies. Tr. 37–40, 49. Plaintiff also does the sweeping, mopping, vacuuming, and dish washing at the house, but needs help from her mother carrying groceries inside from the store. Tr. 40–41.

> Plaintiff stated that she does not think she can work presently because:

> My back and my left leg . . . . There is a pain that comes from mostly my lower back, but sometimes my middle back, that my lower back and it shoots down – well goes down my left side of my back and then comes down on the left side of my leg. If it hits my knee before I can get to a seat, then I lose all feeling to my left leg and I fall . . . .

Tr. 51. When asked whether pain medication would help her to work eight hours a day, 40 hours a week, she responded: ". . . yes and no because they – they do help, but they only help a certain amount of time" before the pain returns. Tr. 52.

On February 8, 2019, the ALJ denied Plaintiff's claim for DIB and SSI benefits. Tr. 26. In her decision, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2017. Tr. 18. At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 1, 2015, the alleged onset date. Tr. 18. At step two, the ALJ determined that Plaintiff has the following severe impairment: degenerative disc disease with resulting leg and back pain. Tr. 18. The ALJ also assessed Plaintiff's alleged mental impairment – major depressive disorder – utilizing the "special technique" required by 20 C.F.R. § 404.1520a and § 416.920a.[2]  Tr. 41. In so doing, the ALJ determined that

---

[2]  The Second Circuit has held that where an ALJ's failure to adhere to the regulations' special technique is not harmless, failure to apply the "special technique" is reversible error. *See Kohler v. Astrue*, 546 F.3d 260, 265 n. 4 (2d Cir. 2008). The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P,

Plaintiff's alleged mental impairment caused no more than mild limitation in any of the four psychological areas of functioning evaluated through the technique: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Tr. 19. Therefore, the ALJ found that Plaintiff's mental impairment is non-severe. Tr. 19.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. In so doing, the ALJ "gave particular attention to listing 1.04, which pertains to disorders of the spine," but found that the evidence did not establish the presence of a spinal condition that met the criteria. Tr. 19. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[3] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that she "can occasionally climb ramps or stairs, and occasionally push, pull, and/or bend at the waist." Tr. 20.

Based on this RFC, at step four the ALJ found that Plaintiff is unable to perform

App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimant's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are four broad areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). A claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the Paragraph B criteria. "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

her past relevant work as a machine packager. Tr. 24. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the vocational expert, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a retail marker, small products assembler, and a produce weigher. Tr. 25, 56. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB or SSI. Tr. 26.

On March 28, 2019, Plaintiff asked the Commissioner's Appeals Council to review the ALJ's decision. Tr. 182–84. On May 1, 2020, the Appeals Council denied Plaintiff's request. Tr. 2. The ALJ's decision thus became the "final decision" of the Commissioner, subject to judicial review.21

## DISCUSSION

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court

must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

As indicated above, in the present case Plaintiff maintains that her case should be remanded to the Commissioner for further proceedings because the ALJ failed to reconcile the conflict between her treating physician's opinion, another medical source opinion in the record, and the ALJ's RFC determination. Pl. Mem. of Law at 2. The Court disagrees with Plaintiff's argument.

The Alleged "Conflict"

On April 8, 2016, Dr. Bidappa G. Maneyapanda, Plaintiff's treating physician since at least 2014, completed a form on Plaintiff's behalf from the New York State Office of Temporary and Disability Assistance that was entitled "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination." Tr. 320–21. In assessing Plaintiff's functional limitations on this form, Dr. Maneyapanda indicated that there was no evidence of limitation in Plaintiff's mental functioning, or in her capacity for walking, sitting, seeing, hearing, speaking, or using her hands. Tr. 321. Dr. Maneyapanda indicated that Plaintiff was "moderately limited" in her capacity for standing, lifting, carrying, and stairs or other climbing, and "very limited" in her capacity for pushing, pulling, and bending. Tr. 321. He stated that Plaintiff should "avoid work requiring prolonged standing, [and] repeated bending and standing." Tr. 321.

On January 16, 2018, Nurse Practitioner ("N.P.") Takesha Leonard gave Plaintiff a complete physical exam. Tr. 511. N.P. Leonard stated that Plaintiff's spinal strength was "[d]iminished and with pain" and her range of motion was mildly limited, but that her spinal contour and muscle tone was normal and she walked with a normal gait. Tr. 510. N.P. Leonard assessed Plaintiff as having "[i]ntervertebral disc disorders with radiculopathy, lumbar region," and advised that Plaintiff "may return to work with restrictions." Tr. 510. N.P. Leonard also advised Plaintiff to "exercise (break a sweat)" at least 30 minutes a day, 4 days per week to combat her morbid obesity. Tr. 510. Months later, in July and November 2018, N.P. Leonard assessed Plaintiff as having "low back pain," advised her "against bending, heavy lifting, and twisting," and recommended "gentle exercise for mobility" and stretching to alleviate the pain. Tr. 515, 522.

As indicated above, in her decision denying DIB and SSI benefits to Plaintiff, the ALJ determined that Plaintiff had the RFC to perform light work, except she could only occasionally climb ramps or stairs, and only occasionally push, pull, and/or bend at the waist. Tr. 20. In making this determination, the ALJ gave "great weight" to the opinion of Dr. Maneyapanda, and "little weight" and "some weight" to opinions expressed by N.P. Leonard. Tr. 23. The ALJ explained that Dr. Maneyapanda had a treating relationship with Plaintiff, and that his opinion was consistent "with the benign objective medical evidence and the claimant's reports of daily activities . . . ." Tr. 23. By contrast, although N.P. Leonard also had a treating relationship with Plaintiff, the ALJ gave "little weight" to her statement advising Plaintiff that she could return to work with restrictions because it was both vague and an issue reserved for the Commissioner. The ALJ further explained that she gave "some weight" to N.P. Leonard's advisement that Plaintiff should avoid bending

and heavy lifting and twisting because it was consistent with the other objective evidence of record that showed Plaintiff was limited to light work and occasional bending. Tr. 23.

Legal Principles

"Under the Commissioner's own rules, if the ALJ's 'RFC [determination] conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Where the conflicting medical opinion is from a treating physician, the ALJ must explain why she did not afford the opinion controlling weight, and give "good reasons" in her decision for not following the treating physician's opinion. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *4 (W.D.N.Y. Aug. 25, 2015) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). Nevertheless, in cases involving claims filed before March 27, 2017, the opinions of nurse practitioners do not warrant the same deference as those of treating physicians because nurse practitioners are not considered to be "acceptable medical sources" under the regulations. *See Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) (citing 20 C.F.R. § 404.1513(a), (d)(1)). Thus, where a claim is filed before March 27, 2017, the regulations require only that the ALJ "generally should explain the weight given to opinions [of nurse practitioners] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2).

Application to N.P. Leonard's Opinion

With these principles in mind, the Court finds no error in the ALJ's treatment of N.P. Leonard's opinion. Although N.P. Leonard is a medical source with a treatment relationship with Plaintiff, the ALJ was required only to explain the weight given to her opinion, or otherwise ensure that the discussion of the evidence in the determination or decision allowed the Court to follow her reasoning. 20 C.F.R. § 404.1527(f)(2).

The ALJ satisfied that requirement. She explained that she gave "little weight" to N.P. Leonard's January 18, 2018 opinion because the statements show that Plaintiff was capable of physical activity, but that N.P. Leonard's statement that Plaintiff "may return to work with restrictions" was both vague, and an issue reserved for the Commissioner. Tr. 23. Further, the ALJ explained that she gave "some weight" to N.P. Leonard's later statements advising Plaintiff against bending and heavy lifting, and suggesting she perform gentle exercise and stretching to alleviate back pain and improve mobility because those statements were consistent with the medical evidence in the record.

Not only was the Court able to follow the ALJ's reasoning, but, after reviewing the record, the Court finds that it was supported by substantial evidence. For instance, x-rays performed for the consultative medical exam by Dr. John Schwab in 2015 revealed that Plaintiff had degenerative disc disease and an old compression fracture, and Dr. Schwab detected some limitation in Plaintiff's lumbrosacral spine. Tr. 304. Nevertheless, Dr. Schwab ultimately concluded that Plaintiff's prognosis was stable, and that Plaintiff has only "mild restriction to bending, lifting, and carrying." Tr 304.

Application to Dr. Maneyapanda's Opinion

With respect to the medical opinion of Plaintiff's treating physician, Dr. Maneyapanda, Plaintiff has failed to demonstrate that the ALJ's RFC determination conflicts with that opinion. The ALJ's RFC determination limits Plaintiff to light work, with only occasional climbing ramps or stairs, and only occasionally pushing, pulling and/or bending at the waist. As defined in the regulations, "light work":

> [I]nvolves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). "'Occasional' means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday." *Titles II & Xvi: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996).

Dr. Maneyapanda's opinion was that Plaintiff should "avoid work requiring prolonged standing, [and] repeated bending and standing," and that Plaintiff was "very limited" in her capacity for pushing, pulling, and bending. Tr. 321. The ALJ's RFC determination was that Plaintiff was capable of light work, an exertional level that allowed for "sitting most of the time with *some* pushing and pulling." Tr. 20; 20 C.F.R. § 404.1567(b) (emphasis added). Moreover, the ALJ included the further limitations that Plaintiff could push, pull, and bend at the waist only occasionally. Tr. 20. In other words, the ALJ not only professed to give "great weight" to Dr. Maneyapanda's opinion, but – Plaintiff's arguments to the contrary notwithstanding – she also formulated an RFC that

11

conformed with the limitations identified by the opinion: avoiding "prolonged standing" with an exertion level that accommodated "sitting most of the time," and limiting the pushing and pulling to only "some" or "occasional." Significantly, the ALJ presented the vocational expert with a hypothetical that was identical to the RFC determination she ultimately made, and the vocational expert testified that there would be positions in the national economy that such an individual could perform. Tr. 56.

Accordingly, the Court finds that Plaintiff has failed to demonstrate a conflict between the ALJ's RFC determination and the medical opinion of Dr. Maneyapanda. Therefore no further explanation from the ALJ is required. *See, e.g., Morgan v. Berryhill*, No. 18-CV-484-HKS, 2019 WL 4871502, at *4 (W.D.N.Y. Oct. 3, 2019) (finding that no further explanation from the ALJ was necessary where the RFC determination was supported by substantial evidence and was consistent with the medical opinion in the record).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 11] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 13] is granted. The Clerk is respectfully directed to close this case.


DATED:        September 15, 2021
              Rochester, New York


                              *Charles J. Siragusa*
                              CHARLES J. SIRAGUSA
                              United States District Judge